UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19-CR-00623-RWS |
| | ) |
| GEORGE BAKER, | ) |
| a/k/a "D3" | ) |
| | ) |
| Defendant. | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

1. **PARTIES**

The parties are the defendant George BAKER, represented by defense counsel Dramon Foster, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA**

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), in exchange for the defendant's voluntary plea of guilty to Counts I – III (distribution of a controlled substance) of the Indictment, the Government agrees to move for dismissal as to Count IV (possession of a firearm in furtherance of drug trafficking) and Count V (receipt of a firearm while under indictment). The Government also agrees that no further federal prosecution will be brought in this District relative to the defendant's distribution of controlled substances, the death of D.T., and possession of

1

firearms between June 1, 2018, and January 2, 2021, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.  **Notwithstanding the application or non-application of any Guidelines recommended herein, and irrespective of the advisory range established by the proper application of the Guidelines, the parties agree to jointly recommend concurrent sentences of 120 months imprisonment on Count I, and 60 months imprisonment on Counts II and III at the time of sentencing.  On Count I, this sentencing recommendation represents a downward variance due to factors contained in Title 18, United States Code, Section 3553(a).  On Counts II and III, this sentencing recommendation represents an upward variance due to factors contained in Title 18, United States Code, Section 3553(a).  The parties believe this will adequately reflect the seriousness of the offense and provide just punishment for the offense.**

The defendant agrees to forfeit to the United States all property subject to forfeiture under the applicable statute(s), and the defendant knowingly and voluntarily waives any right, title, and interest in all items (including all data contained therein) seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

3.  **ELEMENTS**

As to Count I, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are: (1) On or about June 1, 2018, the defendant knowingly distributed

2

a controlled substance; and (2) at the time of the transfer, the defendant knew it was a controlled substance.

As to Count II, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are: (1) On or about August 6, 2018, the defendant knowingly distributed a controlled substance; and (2) at the time of the transfer, the defendant knew it was a controlled substance.

As to Count III, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are: (1) On or about August 7, 2018, the defendant knowingly distributed a controlled substance; and (2) at the time of the transfer, the defendant knew it was a controlled substance.

**4.    FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On Friday June 1, 2018, at approximately 9:25 p.m., hours officers of the Florissant Police Department responded to 2700 Mockingbird Lane in Florissant, Missouri in reference to an overdose. Upon their arrival, officers located D.T., a person whose identity is known to defendant. D.T. was deceased. Following a post-mortem examination, including a toxicology panel, the medical examiner determined that D.T. died of "acute fentanyl intoxication."

Investigators spoke with witnesses, who reported that during the daytime hours on June 1, 2018, D.T. and his wife A.T. had contacted a subject known to them as "D-3" at cellular phone

number (573) 410- 9340.  D.T. and A.T. then traveled to "D-3's" residence and purchased what they believed to be heroin from "D-3" and D.T. ingested the same.  According to A.T., D.T. had no opportunity or ability to purchase any other controlled substances after they purchased from "D-3."

      A.T. provided investigators specific information regarding the transaction with "D-3," and allowed them to look through her cellular phone.  The information contained in A.T.'s telephone corroborated her statements.  She also provided a physical description of "D-3," and directed investigators to "D-3's" residence at 3300 Welsberg Drive, St. Louis, Missouri.  Utilizing various law enforcement databases, investigators identified defendant George Baker as a person associated with the residence at 3300 Welsberg Drive.  Baker matched the physical description of "D-3" provided by A.T.

      Investigators constructed a six-person photo array containing a photograph of George Baker and five similar-looking individuals.  They presented the photo line-up to A.T., who positively identified Baker as "D-3."  Investigators also interviewed a second witness who reported purchasing "heroin" from "D-3" after contacting him at telephone number (573) 410-9340.  This second witness also identified defendant George Baker as "D-3" after being shown a six-person photo array containing his picture.

      In the aftermath of D.T.'s death, the Florissant and St. Ann Police Departments conducted a joint investigation of George Baker.  They utilized a confidential informant (CI) to conduct two controlled purchases of "heroin" from Baker.  On August 6, 2018, the CI contacted Baker at (573)-410-9340, to arrange a purchase of $30 worth of heroin.  Baker instructed the CI to go to Baker's residence at 3300 Welsberg Drive.  Investigators observed the CI contact Baker at the front door of the residence.  The CI gave Baker $30 in exchange for a clear bag with multiple capsules

4

containing a powder substance. The capsules were forensically tested at the Drug Enforcement Administration (DEA) crime laboratory, where they were confirmed to contain 0.156 grams of fentanyl.

On August 7, 2018, in the presence of investigators, the CI contacted Baker at (573)-410-9340. The CI was again directed to 3300 Welsberg where he/she contacted Baker at the front door and exchanged $40 for a plastic bag with multiple capsules containing a powder substance. The capsules were forensically tested at the DEA crime laboratory, where they were confirmed to contain 0.193 grams of fentanyl.

On August 15, 2018, investigators executed a federal search warrant at 3300 Welsberg Drive. George Baker was present in the residence at the time of the execution of the warrant. When advised of the nature of the investigation, Baker advised police, "I don't have any dope right now." When asked whether there were any weapons in the residence, Baker responded, "I have a pistol in my room."

During the execution of the search warrant, investigators recovered digital scales, a black Glock 23 handgun with a 22 round extended magazine (loaded), a fifty-round drum magazine, hundreds of used sandwich-sized plastic bags, one Glock 22 handgun with extended magazine, Dormin and Lactose (both commonly used as cutting agents), and countless other items consistent with the distribution of opioids. They also located a cellular telephone bearing telephone number (573)-410-9340.

Baker was placed under arrest and transported to the Florissant Police Department, where he was advised of his Miranda rights. Baker waived his rights and, in a video-recorded statement, admitted that he had been selling "heroin" since March 2018. Baker acknowledged that he resided

at 3300 Welsberg Drive and that the items (including the cellular telephones) recovered from the residence belonged to him.

Investigators obtained a search warrant for records associated with telephone number (573)-410-9340, confirmed four calls between that telephone and A.T.'s telephone on June 1, 2018. Geolocation information confirmed that at the time of the transaction in which A.T. and D.T. purchased "heroin" from Baker at 3300 Welsberg Drive, Baker's cellular telephone was utilizing a tower adjacent to that residence.

In summary, on June 1, 2018, the defendant intentionally transferred a controlled substance to A.T. At the time of the transfer, the defendant knew that the substance was a controlled substance. D.T. would not have died but for the use of that same controlled substance transferred by the defendant. On August 6, 2018, and August 7, 2018, the defendant knowingly transferred a controlled substance to a CI. At the time of the transfer, the defendant knew the substance was a controlled substance.

5. **STATUTORY PENALTIES**

As to Counts I, II, and III, the defendant fully understands that the maximum possible penalty provided by law for distributing a controlled substance, to which the defendant is pleading guilty, is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not less than 3 years and not more than life.

The defendant understands that the Court may impose the sentences to run consecutively (one after the other), or concurrently (at the same time).

6.  **U.S. SENTENCING GUIDELINES (2021 MANUAL)**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

   a.  **Chapter 2 Offense Conduct:**

   (1) **Count I: Distribution of a Controlled Substance**

   (a) **Base Offense Level:** The parties agree that the base offense level is 38, as found in Section 2D1.1(a)(2), because the defendant was convicted under 21 U.S.C. § 841(b)(1)(C) and the offense of conviction establishes that death resulted from the use of the substance.

   (b) **Specific Offense Characteristics:** The parties recommend that the following Specific Offense Characteristics apply:

   (i)  2 levels should be added pursuant to Section 2D1.1(b)(1), because a firearm was possessed.

   b.  **Chapter 3 Adjustments:**

   (1) **Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with

7

defendant's eligibility for this deduction, the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

 c. **Other Adjustment(s)/Disputed Adjustments:** The parties have no further agreement regarding any other adjustments.

 d. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 37.

 e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.  Depending on the underlying offense and the defendant's criminal history, the defendant could be a Career Offender pursuant to Section 4B1.1.  If the Court finds the defendant is a Career Offender, the Total Offense Level may be higher, and the Criminal History Category may be as high as Category VI.  The defendant has discussed these possibilities with defense counsel.  Both parties reserve the right to argue that the defendant is or is not a Career Offender.

 f. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the

right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**

    a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

        **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

        **(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues, provided that the Court sentences the defendant to the parties' joint recommendation of 120 months' imprisonment on Count I, 60 months' imprisonment on Counts II and III, with all sentences to run concurrently . Otherwise, the adversely affected party—the defendant if the sentence is higher, or the Government if the sentence is lower—reserves the right to appeal only sentencing issues related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness.

    b. **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    c. **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records

pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a.

8. **OTHER**

    a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

    b. **Civil or Administrative Actions not Barred; Effect on Other Government Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant.

    c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These and any other special conditions imposed by the Court will be restrictions with which defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

    d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant

toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

  e. **Possibility of Detention:** The defendant shall be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

  f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.

  g. **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice.  By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

  The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities.

  The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence.  The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any

11

documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS**

In pleading guilty, the defendant acknowledges, fully understands, and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant knowingly and voluntary waives any rights and defenses defendant may have under the Excessive Fines Clause of the Eight Amendment to the United States Constitution

to the forfeiture of property in this proceeding or any related civil proceeding, special or other assessment, and any order of restitution.

If the defendant is not a U.S. citizen, the guilty plea could impact the defendant's immigration status or result in deportation. In particular, if any crime to which the defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if the defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

| | |
|---|---|
| 11/20/2023<br>Date | _____<br>Nathan L. Chapman<br>Assistant United States Attorney |
| 11/16/23<br>Date | _____<br>George Baker<br>Defendant |
| 10/27/23<br>Date | _____<br>Dramon Foster<br>Attorney for Defendant |

14